# HAMILTON *v.* DUNN.

PATENTS; INTERFERENCE; REDUCTION TO PRACTICE.

1. In an interference involving the invention of a heavy oil burning orchard heater the novel feature of which was a perforated draft tube, it was *held* that the construction and operation by the senior party of a device in the presence of a disinterested and intelligent witness, whose testimony concerning it would have enabled anyone skilled in the art to have successfully constructed the device of the issue, constituted disclosure and reduction to practice.

2. The senior party to an interference involving a heavy oil burning orchard heater containing a perforated draft tube is entitled to an award of priority where his evidence shows disclosure and reduction to practice not later than the first week in January, 1912, and manufacture and sale of the device within a few months thereafter, while the junior party's claim of conception and reduction to practice is restricted to January 15, 1912, and the evidence shows that while he constructed a heater in December, 1911, and January, 1912, its perforations clogged with soot after a long period of burning; that it had no stack; that in June, 1912, its manufacture was considered by a manufacturing company along with others, but it was not adopted, and that no further activity was shown until after the senior party's heater was on the market. (Citing *Matthes* v. *Burt*, 24 App. D. C. 265; *Brown* v. *Campbell*, 41 App. D. C. 499; and *Dutcher* v. *Jackson*, 44 App. D. C. 465.)

No. 1090. Patent Appeals. Submitted January 10, 1917. Decided February 19, 1917.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference proceeding.    *Affirmed.*

The facts are stated in the opinion.

*Mr. H. E. Dunlap* for the appellant.

*Mr. W. S. Hodges* for the appellee.

Mr. Justice ROBB delivered the opinion of the Court:

Appeal from a decision of an Assistant Commissioner of Patents in an interference proceeding in which priority of invention was awarded the senior party, Emanuel W. Dunn. The issue is expressed in five counts, of which we reproduce the 1st and 5th:

"1. An orchard heater comprising an oil receptacle, a cover therefor, a stack mounted on said cover through which the products of combustion are conducted, and a perforated draft-inlet tube mounted in said cover and suspended within said receptacle, the perforations of said tube being distributed throughout

the length of the latter, whereby they are successively uncovered as the fuel is consumed, for increasing the volume of oil admitted to the receptacle."

"5. In an orchard heater, the combination with a liquid fuel container having a cover with a stack through which products of combustion are permitted to escape of a draft tube located within said container at a point laterally of said stack and communicating with the atmosphere through said cover, said tube having openings therein through which air is admitted to the container in increasing volume as the level of the fuel is lowered."

The invention disclosed by the above counts is an orchard heater in which heavy oil is burned. Similar heaters have been in use for some time, the material difference between this heater and those of the prior art being the perforated draft tube. It thus will be seen that the invention is a very simple one. Dunn's application is a division of an application filed September 9, 1912. James L. Hamilton filed September 23, 1913.

Mr. Dunn has been interested in oil-burning appliances since 1897, and in orchard heaters since 1910. He testifies that he commenced experiments in the further development of these heaters in the spring of 1911 and during the summer he assembled a heater embodying the perforated draft tube of the issue. This heater finally was set up in the press room of the Call Building in San Francisco and on September 25, 1911, was tested in the presence of several witnesses, including an engineer named George A. Schastey and Mr. John D. Spreckles, Jr. This heater was introduced as an exhibit. Mr. Schastey, a disinterested and very intelligent witness, thoroughly familiar with the art, fully corroborates Mr. Dunn as to this early heater. The witness was asked what took place, and replied: "The heater was connected when we arrived, and the fire started. It was kept burning continuously while we were there, and it was generally discussed and explained, particularly in reference to the down draft." The witness further stated that he saw the heater again within a week and that Mr. Dunn then "took the tube out and lifted the tube up to show me the principle," and

that the tube was perforated.   Mr. Spreckles also testified as to
this demonstration.   The Examiner of Interferences found no
fault with Dunn's evidence as to the construction and test of
this exhibit, but nevertheless ruled that it does not disclose the
issue because the cover of the oil receptacle is the stove, the top
of which "is more than 20 inches above the top of the recep-
tacle."   The Examiners in Chief expressed a doubt as to wheth-
er this exhibit embodies the specific structure defined in the
courts, while the Assistant Commissioner ruled that it does not.
However, Dunn proceeded to perfect another heater which clear-
ly does embody the issue, and this was perfected and tested
about the holidays of 1911, Mr. Schastey testifying that "these
experiments of Mr. Dunn's, as I remember, all centered around
the holidays of 1911, and may have been a week before or a
week after;" that is, either a little before Christmas of 1911,
or the first week in January, 1912.   A careful reading of the
evidence leaves no room for doubt in our minds that this exhibit
(marked "No. 5") amounted to a reduction to practice of the
invention.

In the early fall of 1912 Dunn had sample heaters made, a
number of which were sent to fruit growers in the southern part
of California.   Late in December of that year, or early in Jan-
uary of 1913, other heaters were sent out.   This resulted in
orders for a large number of heaters, and the success of the
device was assured.

Hamilton was engaged in manufacturing orchard-heating
devices and possessed every facility for placing upon the market
any invention he might make.   In his preliminary statement
he alleges disclosure and reduction to practice of the invention
"in the early part of January, 1912."   Therefore, under the
interpretation given to such an averment in the Patent Office,
he is restricted to January 15, 1912, as his date of conception
and reduction to practice.   Mr. Hamilton testifies that he con-
structed a heater embodying the invention and tested it in the
back yard of his boarding house in December of 1911 and Jan-
uary of 1912, and that the tests showed the heater to be success-
ful.   His wife and daughter testify that such tests were made,

the wife testifying that her husband "regarded them as success-ful," and the daughter that the perforations clogged with soot "after a long period of burning." This heater was introduced as an exhibit, but it had no stack. The Examiners in Chief commented upon this fact and upon the failure of any witness to testify that it ever did have one.

Hamilton was president of the Hamilton Orchard Heater Company, The Wheeling Corrugating Company, of Wheeling, West Virginia, manufactured orchard-heating devices for Mr. Hamilton and a Mr. Westwood was the general sales agent of that company. Mr. Hamilton in June of 1912 visited the com-pany, when the device "involved in this interference was taken into consideration, along with others," but was not adopted. No further activity occurred until after Dunn's heater was on the market, and a letter written by Mr. Hamilton to Mr. Westwood, quoted in full by the Examiners in Chief, clearly shows that Dunn's activity alone was responsible for Hamilton's change of attitude.

While we agree with the Examiners in Chief and the Assist-ant Commissioner that in no event, under the facts of this case, can it be said that Hamilton is the prior inventor (*Matthes* v. *Burt*, 24 App. D. C. 265; *Brown* v. *Campbell*, 41 App. D. C. 499; and *Dutcher* v. *Jackson*, 44 App. D. C. 465), we are quite clear that Dunn should be given a date of conception and dis-closure as early as September 25, 1911; in other words, that the construction and operation of the early device in the presence of Mr. Schastey and Mr. Spreckles amounted to such a disclos-ure. The invention really resided in the perforated draft tube, and Mr. Schastey's testimony would enable anyone skilled in the art successfully to construct the device of the issue, which is sufficient to constitute a disclosure. Since that date is earlier than any date which can be accorded Hamilton, Dunn was en-titled to the award of priority, as he showed due diligence.

Moreover, the burden was upon Hamilton to establish his case by a preponderance of the evidence. Putting aside the evidence of Dunn's early activity, Hamilton's evidence falls short of estab-

lishing that he conceived and disclosed the invention prior to the date of disclosure established by Dunn for his exhibit No. 5.

The decision is affirmed.                              *Affirmed.*

Mr. Chief Justice COVINGTON, of the Supreme Court of the District of Columbia, sat with the Court in the hearing and determination of this appeal, in the place of Mr. Chief Justice SHEPARD.